**CARELLA BYRNE CECCHI**
 **BRODY & AGNELLO, P.C.**
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com
kcooper@carellabyrne.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS MILLER, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| EAGLE PHARMACEUTICALS, INC., SCOTT TARRIFF, and BRIAN CAHILL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Nicholas Miller ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Eagle Pharmaceuticals, Inc. ("Eagle Pharmaceuticals" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Eagle Pharmaceuticals; and (c) review of other publicly available information concerning Eagle Pharmaceuticals.

## NATURE OF THE ACTION AND OVERVIEW

1.       This is a class action on behalf of persons and entities that purchased or otherwise acquired Eagle Pharmaceuticals securities between August 8, 2023 and November 28, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Eagle Pharmaceuticals is an integrated pharmaceutical company engaged in research and development, clinical, manufacturing and commercial sales. The Company has several commercialized products, including PEMFEXY, which is

1

a metabolic inhibitor used in combination with chemotherapy for the initial treatment of certain genomic tumor aberrations.

3.     On November 9, 2023, before the market opened, Eagle Pharmaceuticals announced that it would not release its third quarter 2023 results that day (as had been expected) because the Company "requires more time to review potential adjustments relating to the reporting of sales of PEMFEXY® prior to filing its Form 10-Q." The Company also disclosed it "expects to revise its previously disclosed 2023 full year guidance downward."

4.     On this news, the Company's stock price fell $4.16, or 30.4%, to close at $9.54 per share on November 9, 2023, on unusually heavy trading volume.

5.     After the market closed on November 9, 2023, the Company also disclosed that it was reviewing "potential adjustments to reserves for returns and price adjustments of approximately $15.0 million to $20.0 million." These amounts relate "to returns and a price adjustment for PEMFEXY stemming from slower-than-anticipated pull-through from a wholesale customer predominantly due to expiry of inventory."

6.     On this news, the Company's stock price fell $0.27, or 2.8%, to close at $9.27 per share on November 10, 2023, on unusually heavy trading volume.

7.     Then, on November 29, 2023, before the market opened, Eagle Pharmaceuticals disclosed that Scott Tarriff, the Company's President and Chief

Executive Officer resigned. The Company's board of directors accepted the resignation "[a]fter consideration of various alternatives, including termination with or without cause."

8.    On this news, the Company's stock price fell $2.55, or 31%, to close at $5.68 per share on November 29, 2023, on unusually heavy trading volume.

9.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing slower-than-anticipated pull-though from a wholesale customer predominantly due to expiry of inventory; (2) that, as a result, the Company had overstated its revenue; (3) that the Company did not have effective internal controls and procedures over financial reporting as to PEMFEXY sales; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

15.     Plaintiff Nicholas Miller, as set forth in the accompanying certification, incorporated by reference herein, purchased Eagle Pharmaceuticals securities during

4

the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Eagle Pharmaceuticals is incorporated under the laws of the Delaware with its principal executive offices located in Woodcliff Lake, New Jersey. Eagle Pharmaceuticals' common stock trades on the NASDAQ exchange under the symbol "EGRX."

17.     Defendant Scott Tarriff ("Tarriff") was the Company's Founder, President and Chief Executive Officer ("CEO") since its inception in January 2007 until November 27, 2023.

18.     Defendant Brian Cahill ("Cahill") was the Company's Chief Financial Officer ("CFO") at all relevant times.

19.     Defendants Tarriff and Cahill (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to

5

material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Eagle Pharmaceuticals is an integrated pharmaceutical company engaged in research and development, clinical, manufacturing and commercial sales. The Company has several commercialized products, including PEMFEXY, which is a metabolic inhibitor used in combination with chemotherapy for the initial treatment of certain genomic tumor aberrations.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on August 8, 2023. On that day, the Company issued a press release announcing its second quarter 2023 financial results. The press release stated, in relevant part:

• Total revenue for Q2 2023 was $64.6 million

• Q2 2023 net income was $0.39 per basic and diluted share and adjusted non-GAAP net income[] was $1.18 per basic and diluted share

• Q2 2023 net income was $5.2 million

• Q2 2023 adjusted non-GAAP EBITDA[] was $20.7 million

• Gross margin was 74% for the first half of 2023, up from 73% for the first half of 2022

• Adjusted non-GAAP gross margin1 was 83% for the first half of 2023, up from 74% for the first half of 2022

• Gross profit in its oncology business was $41.9 million in the second quarter of 2023 compared with $38.7 million in the prior year period, representing gross margin of 80% and 72%, respectively

*          *          *

"We delivered a strong second quarter with impressive earnings and revenue, continuing the positive trajectory from an outstanding 18 months of business performance," stated Scott Tarriff, President and Chief Executive Officer of Eagle Pharmaceuticals. "***Our marketed drugs across oncology and our hospital business are performing well***. . . ."

22.    On August 8, 2023, Eagle Pharmaceuticals filed a Form 10-Q with the SEC for the period ended June 30, 2023 (the "2Q23 10-Q"), which stated that the Company "recognized revenues from product sales including Pemfexy" and Pemfexy, among other products "were sold directly to wholesalers, hospitals and surgery centers through a third-party logistics partner." The  2Q23 10-Q stated, in relevant part:

Revenue is measured as the amount of consideration the Company expects to receive in exchange for transferring products or services to a customer. ***To the extent the transaction price includes variable consideration, the Company estimates the amount of variable consideration that should be included in the transaction price generally utilizing the expected value method to which the Company expects to be entitled. As such, revenue on sales to end users for Pemfexy***, Belrapzo, Ryanodex, Barhemsys, Byfavo, and vasopressin ***are recorded net of chargebacks, rebates, returns, prompt pay discounts, wholesaler fees and other deductions***. Our products are

contracted with a limited number of oncology distributors and hospital buying groups with narrow differences in ultimate realized contract prices used to estimate our allowance for chargebacks and rebate reserves. ***The Company has a product returns policy on some of its products that allows the customer to return pharmaceutical products within a specified period of time both prior to and subsequent to the product's expiration date. The Company's estimate of the provision for returns is analyzed quarterly and is based upon many factors, including historical experience of actual returns and analysis of the level of inventory in the distribution channel, if any***.

*       *       *

Variable consideration is included in the transaction price if, in the Company's judgment, it is probable that a significant future reversal of cumulative revenue under the contract will not occur. ***Estimates of variable consideration are made generally using the expected value method and determination of whether to include estimated amounts in the transaction price are based largely on an assessment of the Company's anticipated performance and all information (historical, current and forecasted) that is reasonably available***. ***The Company believes that the estimates it has established are reasonable based upon current facts and circumstances.*** Applying different judgments to the same facts and circumstances could result in the estimated amounts to vary.

23.     The 2Q23 10-Q also purported to warn that "The primary factors that may determine our revenues derived from Pemfexy" include "the level of orders submitted by wholesalers, hospitals and surgery centers[.]"

24.     The 2Q23 10-Q affirmed that "our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of June 30, 2023."

25.     On October 24, 2023, the Company issued a press release which announced, in relevant part:

8

Eagle Pharmaceuticals, Inc. … today announced that the U.S. Patent and Trademark Office has granted the Company U.S. Patent No. 11,793,813 ("the '813 patent") entitled "Pemetrexed Formulations." Eagle has submitted the patent for listing in the U.S. Food and Drug Administration's Orange Book. The '813 patent is directed to pemetrexed formulations, including the FDA-approved commercial formulation of PEMFEXY®.

*          *          *

"The issuance of this patent is meaningful, as we continue to vigorously protect the commercial success of PEMFEXY and to add to the overall strength of our patent portfolio. ***PEMFEXY maintains a unique J-Code from CMS and sales remain strong, with a 24% share in the commercial (non-340B) pemetrexed market leaving the third quarter of 2023***," stated Scott Tarriff, President and Chief Executive Office of Eagle.

26.   The above statements identified in ¶¶ 21-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing slower-than-anticipated pull-though from a wholesale customer predominantly due to expiry of inventory; (2) that, as a result, the Company had overstated its revenue; (3) that the Company did not have effective internal controls and procedures over financial reporting as to PEMFEXY sales; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

27.     On November 9, 2023, before the market opened, Eagle Pharmaceuticals announced it was delaying the release of its third quarter 2023 results and investor conference call, because the Company "requires more time to review potential adjustments relating to the reporting of sales of PEMFEXY® prior to filing its Form 10-Q." The Company also disclosed it "expects to revise its previously disclosed 2023 full year guidance downward." On that date, the Company filed a Form 8-K report, which stated:

> On November 9, 2023, Eagle Pharmaceuticals, Inc., or the Company, issued a press release, or the Press Release, announcing, among other things, that it will be ***delaying the release of its third quarter 2023 results*** and related investor conference call as ***the Company will need more time to review potential adjustments relating to the reporting of sales of PEMFEXY®.*** The Company anticipates filing a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission no later than one business day after the due date of its Quarterly Report on Form 10-Q for the quarter ended September 30, 2023 ("Form 10-Q"), and expects to file its Form 10-Q by November 14, 2023, prior to the expiration of the extension period provided by Rule 12b-25 under the Securities Exchange Act of 1934, as amended, or the Exchange Act. ***The Press Release also provided that the Company expects to revise its 2023 guidance downward.***

28.     On this news, the Company's stock price fell $4.16, or 30.4%, to close at $9.54 per share on November 9, 2023, on unusually heavy trading volume.

29.     After the market closed on November 9, 2023, the Company also disclosed that it was reviewing potential adjustments to reserves for returns and price adjustments of approximately $15.0 million to $20.0 million relating to returns and

a price adjustment for PEMFEXY stemming from slower-than-anticipated pull-through from a wholesale customer predominantly due to expiry of inventory. On that date, the Company filed a Form 8-K report, which stated:

> The Company is unable to file its Form 10-Q within the prescribed time period without unreasonable effort or expense primarily because it **requires additional time to complete its review of potential adjustments relating to the reporting of sales of PEMFEXY®**.
>
> As a result of the foregoing, the Company needs additional time to finalize its financial statements and related disclosures to be included in the Form 10-Q. The Company expects to file the Form 10-Q within the 5 calendar day extension provided by Rule 12b-25 of the Securities Exchange Act of 1934, as amended, but can provide no assurance that it will be able to file by such time.
>
> *          *          *
>
> **In addition, the Company is reviewing and expects potential adjustments to reserves for returns and price adjustments of approximately $15.0 million to $20.0 million. These potential adjustments primarily relate to returns and a price adjustment for PEMFEXY® substantially stemming from slower-than-anticipated pull-through from one wholesale customer predominantly due to expiry of inventory**.

30.    On this news, the Company's stock price fell $0.27, or 2.8%, to close at $9.27 per share on November 10, 2023, on unusually heavy trading volume.

31.    Then, on November 29, 2023, before the market opened, Eagle Pharmaceuticals disclosed that Scott Tarriff, the Company's Founder, President and CEO resigned. The Company's board of directors accepted the resignation "[a]fter consideration of various alternatives, including termination with or without cause." On that date, the Company filed a Form 8-K report, which stated:

On November 27, 2023, Scott Tarriff, President and Chief Executive Officer of Eagle Pharmaceuticals, Inc. (the "Company"), ***resigned and retired from his positions with the Company as President, Chief Executive Officer, Principal Executive Officer and Director on the Company's Board of Directors (the "Board"), effective immediately.*** After consideration of various alternatives, including **termination with or without cause,** the Board accepted Mr. Tarriff's resignation. Mr. Tarriff will be on leave until his last day of employment with the Company on December 31, 2023 (the "Separation Date").

32.     On this news, the Company's stock price fell $2.55, or 31%, to close at $5.68 per share on November 29, 2023, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Eagle Pharmaceuticals securities between August 8, 2023 and November 28, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Eagle Pharmaceuticals' shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate

discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Eagle Pharmaceuticals shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Eagle Pharmaceuticals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Eagle Pharmaceuticals; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.    The market for Eagle Pharmaceuticals' securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Eagle Pharmaceuticals' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Eagle Pharmaceuticals' securities relying upon the integrity of the market price of the Company's securities and market information relating to Eagle Pharmaceuticals, and have been damaged thereby.

14

40.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Eagle Pharmaceuticals' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Eagle Pharmaceuticals' business, operations, and prospects as alleged herein.

41.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eagle Pharmaceuticals' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the

Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.    During the Class Period, Plaintiff and the Class purchased Eagle Pharmaceuticals' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Eagle

Pharmaceuticals, their control over, and/or receipt and/or modification of Eagle Pharmaceuticals' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Eagle Pharmaceuticals, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

45.    The market for Eagle Pharmaceuticals' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Eagle Pharmaceuticals' securities traded at artificially inflated prices during the Class Period.  On August 8, 2023, the Company's share price closed at a Class Period high of $22.88 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Eagle Pharmaceuticals' securities and market information relating to Eagle Pharmaceuticals, and have been damaged thereby.

46.    During the Class Period, the artificial inflation of Eagle Pharmaceuticals' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about Eagle Pharmaceuticals' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Eagle Pharmaceuticals and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47. At all relevant times, the market for Eagle Pharmaceuticals' securities was an efficient market for the following reasons, among others:

(a) Eagle Pharmaceuticals shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Eagle Pharmaceuticals filed periodic public reports with the SEC and/or the NASDAQ;

(c) Eagle Pharmaceuticals regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire

services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Eagle Pharmaceuticals was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.    As a result of the foregoing, the market for Eagle Pharmaceuticals' securities promptly digested current information regarding Eagle Pharmaceuticals from all publicly available sources and reflected such information in Eagle Pharmaceuticals' share price. Under these circumstances, all purchasers of Eagle Pharmaceuticals' securities during the Class Period suffered similar injury through their purchase of Eagle Pharmaceuticals' securities at artificially inflated prices and a presumption of reliance applies.

49.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that

19

Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of Eagle Pharmaceuticals who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Eagle Pharmaceuticals' securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Eagle Pharmaceuticals' securities in violation of Section 10(b) of the Exchange

Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Eagle Pharmaceuticals' financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eagle Pharmaceuticals' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Eagle Pharmaceuticals and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Eagle Pharmaceuticals' financial well-being and prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Eagle Pharmaceuticals' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Eagle Pharmaceuticals' securities during the Class Period at artificially high prices and were damaged thereby.

59.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be

true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Eagle Pharmaceuticals was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Eagle Pharmaceuticals securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Eagle Pharmaceuticals within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate

knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.    As set forth above, Eagle Pharmaceuticals and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of

the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 11, 2023          By:  /s/Kevin G. Cooper
**CARELLA BYRNE CECCHI
 BRODY & AGNELLO, P.C.**
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com
kcooper@carellabyrne.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Nicholas Miller*