# Exhibit 2

 Clark Hill

Lauri A. Kavulich
T (215) 640-8527
F (215) 640-8501
Email:LKavulich@ClarkHill.com

Clark Hill
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T (215) 640-8500
F (215) 640-8501

September 18, 2023

VIA ECF

Hon. Evelyn Padin, U.S.D.J.
United States District Court for the District of New Jersey

Re:   *Michael Moran v. Eagle Pharmaceuticals, Inc., et al., Case No. 2:23-cv-03761*

Dear Judge Padin,

We represent Defendant Eagle Pharmaceuticals, Inc. ("Eagle"). OlenderFeldman LLP represents Eagle's President and Chief Executive Officer, Scott Tarriff ("Tariff"), an individual defendant (collectively, the "Defendants"). The Defendants jointly write to request leave to file a Motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Michael Moran's ("Plaintiff" or "Moran") Complaint. Plaintiff has alleged claims for breach of contract and violations of the New Jersey Conscientious Employee Protection Act ("CEPA"). Defendants provide a brief outline of the basis for a Motion to Dismiss below.

<u>Preliminary Statement</u>

Eagle is a publicly traded company regulated by the SEC and other federal and state agencies. Eagle has robust internal controls to ensure compliance with all regulations under which it conducts business. Two of the internal controls are a Compliance Committee and a Corporate Disclosure Committee. At the time of his termination, Plaintiff was Eagle's Chief Commercial Officer ("CCO"). In this role as a Senior Executive at Eagle, he was a member of both the Compliance and Corporate Disclosure Committees. Despite these integral roles, which came with responsibilities for formulating, integrating, and implementing Eagle's commercial practices, Plaintiff somehow expects a factfinder to believe that Eagle and Tarriff ignored his concerns and engaged in alleged unlawful and unethical practices. In waging his frivolous claims, Plaintiff disregards his active role while at Eagle. At all times, Plaintiff had not only the ability, *but also the obligation*, to prevent conduct by Eagle which did not comport with its legal obligations. Plaintiff's lawsuit is nothing more than an avaricious attempt to leverage Eagle into paying him a severance package.

Plaintiff, through bluster and hyperbole, decided to bring suit for his own selfish ends in the hope that Eagle would provide a severance package. The Plaintiff miscalculated, however, Eagle's unwillingness to be held hostage by a disgruntled former employee and officer who failed to perform his job satisfactorily. For the reasons set forth below, the Court should dismiss the Complaint. Eagle respectfully requests a pre-trial conference and leave to file a 12(b)(6) Motion to Dismiss as, on its face, the Complaint fails to state a claim upon which relief can be granted.

Honorable Evelyn Padin, USDJ
September 18, 2023
Page 2

Plaintiff's Employment and Duties at Eagle

Eagle is a fully integrated pharmaceutical company that develops innovative medicines, including PEMFEXY©, which is used in chemotherapy treatments to battle lung cancer. Eagle hired Plaintiff to be its Vice President of Sales in 2016. At that time, Plaintiff signed an offer letter (the "Offer Letter"), which provided the terms of his compensation, including the receipt of severance benefits if Eagle were to terminate his employment.

On January 1, 2020, Plaintiff signed a Severance Benefits Plan Participation Agreement which incorporated Eagle's Severance Benefits Plan (the "Plan"). The Plan, in the plain language of the document, superseded any prior agreement Plaintiff might have had with Eagle with respect to his eligibility for severance benefits.  Plaintiff's Complaint relies upon the Offer Letter as the basis for Plaintiff's claims.  The Offer Letter was superseded by the Plan. The Plan is the operative document, and any claim that relies upon the Offer Letter fails as a matter of law.

As CCO, Plaintiff was an active member of Eagle's Compliance Committee, which was tasked with ensuring that Eagle's sales and marketing practices comported with its legal and ethical obligations. As detailed above, Plaintiff's claims center around alleged conduct of which he was aware and which he *affirmatively approved* as a member of the Committee. In addition, he was a member of the Corporate Disclosure Committee which was tasked with overseeing and approving the production of information required to be disclosed by the Company in its required filings, determine and ensure press releases comply with disclosure requirements, and approve and certify information that is disclosed by Eagle in its required filings. Plaintiff *approved and certified* all filings of Eagle required by regulatory law.

In February 2022, Eagle was preparing to launch the drug PEMFEXY©. Plaintiff was responsible to ensure that PEMFEXY© succeeded in the market. Plaintiff stumbled and then failed to fulfill this responsibility. As a result, Eagle shifted PEMFEXY©'s marketing to another Eagle executive. Eagle ultimately terminated Plaintiff's employment on July 15, 2022 for performance-based reasons, which were set forth in a letter of termination. The termination letter also included a copy of the Plan for reference.

In his Complaint, Plaintiff alleges that Eagle's strategies were unethical. Plaintiff alleges that he voiced concerns about these strategies and their compliance with certain industry standards and federal laws. As outlined below and which will be more fully set forth in a Motion to Dismiss, the "concerns" alleged in Plaintiff's complaint do not rise to the level of protected "whistleblower activity."  In addition, Plaintiff, in his role, *approved* the same programs that he now alleges are unethical.

**Legal Argument**

Breach of Contract

Plaintiff's breach of contract claim must be dismissed because it is not premised on a valid contract. To state a claim for breach of contract under New Jersey law, a plaintiff must allege (i) the existence of a valid contract between the parties; (ii) plaintiff's performance due under that contract; (iii) defective or deficient performance under the contract by the defendant; and (iv) damages resulting from the defendant's breach. *Goldfarb v. Solimine*, 245 N.J. 326, 338, 245 A.3d 570 (2021). Plaintiff premises his breach of contract claim on the terms of the 2016 offer letter he signed when taking the

clarkhill.com

Honorable Evelyn Padin, USDJ
September 18, 2023
Page 3

position of VP of Sales. However, the Offer Letter was clearly superseded by the plain language and terms of the Plan.[1] By definition, a superseded document has no legal effect, and therefore the offer letter has no significance with respect to whether Plaintiff is entitled to severance benefits. *See, e.g.*, *Skold v. Galderma Lab'ys L.P.*, 917 F.3d 186, 194 (3d Cir. 2019) quoting *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002).

<u>Conscientious Employee Protection Act</u>

Plaintiff premises his CEPA claim on his belief that he was terminated as a result of voicing his "concerns" about the sale and marketing of PEMFEXY. In order for Plaintiff to sustain a claim under CEPA, however, "'it is not enough' that [he] simply 'blow the whistle' on conduct with which he disagrees." *McCarthy v. Musclepharm Corp.*, No. 22CV3412 (EP) (CLW), 2023 WL 358561, at *4 (D.N.J. Jan. 23, 2023) (quoting *Carmona v. Restorts Int'l Hotel, Inc.*, 189 N.J. 354, 371, 915 A.2d 518 (2007)). Instead, he must demonstrate: (1) an objection to, or refusal to participate in an activity, policy or practice that he reasonably believed violated either a law, rule, regulation, was fraudulent or criminal or violated a public policy; (2) "whistleblowing" activity as described in N.J.S.A. § 34:19-3(c); (3) an adverse employment action; and (4) a causal connection between the whistleblowing activity and the adverse employment action. *Id.* (citing *Wheeler v. Twp. of Edison*, 326 Fed. App'x. 118, 123 (3d Cir. 2009)).

Despite Plaintiff's allegations that he believed Defendants were engaged in unethical or unlawful behavior, Plaintiff has failed to sufficiently allege that he engaged in protected "whistleblowing activity." While space precludes addressing each of Plaintiff's "concerns" as alleged, it will be clearly set forth in Defendants' anticipated motion that Plaintiff's alleged disagreements, which were often voiced obliquely at best, do not rise to the level of protected activity necessary to sustain his CEPA claim. Because this does not rise to the level of protected activity, he has failed to sufficiently allege a claim under CEPA. *McCarthy*, 2023 WL 358561, at *4.

Furthermore, Plaintiff's actions in his senior executive role and his roles on the Compliance and Disclosure Committees do not support a claim under CEPA. H*e participated in approving the very programs and marketing he now claims are illegal. In addition, he approved the corporate disclosures regarding the launch of PEMFEXY*©*.* It follows that Plaintiff cannot claim he "reasonably believed" that Defendants were engaged in any inappropriate activity or that he engaged in any protected activity. In sum, Defendants' motion will seek dismissal of all of Plaintiff's claims and any other relief this Court may deem just and proper, and accordingly, Defendants request a pre-trial conference as outlined in Your Honor's procedures, or in the alternative, leave to file a motion to dismiss under F.R.C.P. 12(b)(6).

Sincerely,

CLARK HILL                                      OLENDERFELDMAN, LLP
*/s/ Lauri A. Kavulich*                          /s/*Richard J. Angowski, Jr.*
Lauri A. Kavulich                               Richard J. Angowski, Jr.

---

[1] The Court can consider the terms of the Plan (although not referenced or attached to Plaintiff's Complaint), as the Plan is a document "integral" to Plaintiff's claim for severance benefits. *See, e.g., Decoration Design Sols., Inc.*, No. CV 20-2667 (RBK/JS), 2020 WL 6482696, at *3–4.